Richard Otto LUECKENOTTE,
Appellant–Respondent,

v.

Mary Jane LUECKENOTTE,
Respondent–Appellant.

No. SC 82868.

Supreme Court of Missouri,
En Banc.

Jan. 9, 2001.

Stephan Cotton Walker, Jefferson City, for Appellant–Respondent.

Edward C. Clausen, Jefferson City, for Respondent–Appellant.

PER CURIAM.

Richard O. Lueckenotte (Father) appeals from the trial court's dismissal of his motion to terminate and modify judgment of dissolution as to maintenance and its judgment ordering Father to pay Mary Jane Lueckenotte (Mother) $28,693 in unpaid maintenance and $5,000 in attorney's fees. Mother, in a cross-appeal, appeals from the denial of her motion to modify child support, the denial of her motion for declaratory judgment as to past due child support and insurance premiums, and from the trial court's failure to grant her interest on the $28,693 in unpaid maintenance owed by Father. After opinion [1] the court of appeals transferred the case to this Court. Rule 83.02. The judgment of the trial court is affirmed in part and reversed in part.

### Factual and Procedural History

The marriage of Mother and Father was dissolved by a decree of dissolution dated November 19, 1980. Their separation agreement (Agreement) was incorporated into the decree of dissolution. The Agreement included a provision for child support and health insurance for the only child born of the marriage, Kevin, age nine at the time of dissolution, and a provision for maintenance to Mother. When Kevin was thirteen, he was diagnosed with encephalomyeloradiculopathy, a cognitive impairment that left him completely and permanently disabled. Father paid child support for Kevin to Mother until 1992, when Kevin turned 21. Father also paid maintenance to Mother until April of 1998, when

1. Substantial portions of this opinion are adopted from the court of appeals opinion, by the Honorable Patricia Breckenridge, without further attribution.

he filed a motion to terminate and modify judgment of dissolution as to maintenance. In response, Mother filed a motion to dismiss Father's motion to terminate and modify judgment of dissolution as to maintenance, a motion for contempt, a motion for declaratory judgment as to past due child support, maintenance, health insurance premiums and medical expenses, and a motion to modify child support.

A hearing was held on Mother's motion to dismiss, and the trial court sustained the motion without explanation. A second hearing was held on Mother's remaining motions. At the beginning of the hearing, the trial court granted Mother's motion for sanctions for Father's failure to appear for depositions and ordered that Father could not present evidence on any issue upon which he would have been deposed by Mother. After hearing the evidence, the trial court entered a judgment entry finding that Father had breached the parties' Agreement with respect to payment of maintenance, ordering Father to pay Mother past due maintenance of $28,693, and stating that "[i]n the future, [Father's] maintenance obligation shall be calculated based upon his year end tax filing status and not his bi-monthly withholdings. Further, he shall not consider as a deduction from his 'net income' any voluntary contributions to his 401k retirement plan." The trial court also overruled Mother's motion to modify child support and her motion for past due child support, health insurance premiums and medical expenses, and ordered Father to pay Mother's attorney's fees in the amount of $5,000. Father and Mother both appeal.

## I. Maintenance

### A. The Maintenance Agreement Is Not Modifiable

Father argues that the trial court erred in granting Mother's motion to dismiss his motion to terminate and modify judgment of dissolution as to maintenance because the maintenance judgment was modifiable. Specifically, Father argues that no express provision in the Agreement limited or precluded the court's power to modify the dissolution decree as to maintenance.

 Here, the trial court dismissed Father's motion without comment. If a trial court fails to state a basis for its dismissal, this Court presumes the dismissal was based on the grounds stated in the motion to dismiss. *Shaver v. Shaver*, 913 S.W.2d 443, 444 (Mo.App.1996). This Court must affirm the dismissal if it can be sustained on any ground supported by the motion to dismiss. *Id.* This Court does not review the case on the merits, but rather determines whether Father's pleadings were sufficient to withstand a motion to dismiss. *Id.*

Father's motion alleged that changed circumstances justified modification or termination of the maintenance obligation. Specifically, Father alleged that the parties' income has changed significantly, that Mother no longer needs his assistance because she obtained a college degree and has a good job, and that their child is grown and no longer in the home. In response to Father's motion, Mother filed a motion to dismiss his motion to terminate or modify maintenance. Mother argued that section 452.325.6, RSMo 1994,[2] permitted the parties to agree that maintenance could not be modified by the court. Mother argued that the parties agreed that the provisions of their Agreement were not modifiable when they included paragraph 12, which states, "A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement." The trial court granted Mother's motion to dismiss.

 The maintenance provision at issue is best defined as separation agreement decretal maintenance, or maintenance that is agreed to by the parties and

2. All citations are to RSMo 1994 unless otherwise indicated.

incorporated into the decree. *Paynton v. Paynton*, 914 S.W.2d 63, 65 (Mo.App.1996). Section 452.325 allows the trial court to incorporate the separation agreement into the decree, as done in this case, as long as it is not unconscionable. "Maintenance included in a decree by incorporation of the parties' separation agreement ... may be modified by the court in a proper case ... unless the parties provide specifically in the separation agreement that modification is precluded or limited." *Bryson v. Bryson*, 624 S.W.2d 92, 95 (Mo.App.1981); *Sec. 452.325.6* ("[e]xcept for terms concerning the support, custody or visitation of children, the decree may expressly preclude or limit modification of terms set forth in the decree if the separation agreement so provides.") In other words, separation agreement decretal maintenance is modifiable, unless the parties specifically agree to preclude or limit modification. *Paynton*, 914 S.W.2d at 66.

■ As stated previously, paragraph 12 reads, "A modification or waiver of any of the provisions of this Agreement shall be effective only if made in writing and executed with the same formality as this Agreement." Prior to 1988, three cases from the southern and eastern districts of the court of appeals held that language identical to that used in paragraph 12 of the Agreement, when incorporated into a decree dissolving a marriage, was sufficient to expressly preclude modification of maintenance under section 452.325.6. *Davis v. Davis*, 687 S.W.2d 699, 702 (Mo. App.1985); *State ex rel. Robinson v. Crouch*, 616 S.W.2d 587, 590 (Mo.App. 1981); *Nakao v. Nakao*, 602 S.W.2d 223, 226 (Mo.App.1980). It is true that in 1988, the relevant statutes were amended by adding the requirement that the "maintenance order state if it is modifiable or non-modifiable." *Sec. 452.335.3*. But the 1988 amendment did not and, indeed, could not operate retrospectively on rights established by an Agreement and judgment entered prior to enactment of the amendment. *See Doe v. Roman Catholic Diocese*

*of Jefferson City*, 862 S.W.2d 338, 340 (Mo. banc 1993). Under the law at the time of the Agreement and judgment incorporating the Agreement, the maintenance provision was non-modifiable, notwithstanding the absence of a separate maintenance order to that effect. Incorporating the provisions of the Lueckenotte agreement into the decree was sufficient to "expressly preclude ... modification of terms set forth in the decree...." *Sec. 452.325.6*.

■ Father argues that after the trial court ruled that the maintenance provision was non-modifiable, it nevertheless modified the maintenance provision by its statement that "[i]n the future, [Father's] maintenance obligation shall be calculated based upon his year end tax filing status and not on his bi-monthly withholdings. Further, he shall not consider as a deduction from his 'net income' any voluntary contributions to his 401k retirement plan." This statement in no way modified the maintenance obligation. The Agreement plainly stated that Father's monthly income was his income "less taxes and health insurance costs for Kevin." The Agreement also stated that Father was to "refrain from any intentional and voluntary act which would result in his income being diminished" and that he would give Mother copies of his salary records and federal tax returns. Father attempted to circumvent the plain meaning of the agreement by withholding more from his biweekly pay than necessary and voluntarily making 401k contributions with the intention of reducing his income and reducing the maintenance due Mother. The statement of the trial court in its order did not modify the maintenance but merely corrected Father's misinterpretation, which he relied on to underpay maintenance.

## B. Father Delinquent in Payment of Maintenance

■ Father argues that the trial court erred in finding that he owed $28,693 in delinquent maintenance. He claims that the Agreement was facially uncertain be-

cause it was based upon a complicated formula. Father also contends that the trial court's computation of the amount of unpaid maintenance due is not supported by substantial evidence and is against the weight of the evidence.

The parties' Agreement as to maintenance states:

> Husband ... shall pay to wife as and for maintenance the sum of One Hundred Dollar (sic) ($100.00) per month. If Husband's monthly income, less taxes and health insurance costs for Kevin, shall in the future be less than Eight Hundred Dollars ($800.00) per month, Husband's obligation for maintenance shall decrease to One Dollar ($1.00) per month. If Husband's net monthly income as defined above exceeds Twelve Hundred Dollars ($1,200.00) per month, Husband shall pay to Wife as maintenance monthly sum equal to twenty-five percent (25%) of Husband's net monthly income as defined above, less Two Hundred Dollars ($200.00). Husband agrees to refrain from any intentional and voluntary act which would result in his income being diminished.... Husband also agrees to keep Wife informed of his monthly income by giving her copies of his salary records not less than quarterly and of his federal income tax returns annually....

Mother sought a declaratory judgment against Father "for past due maintenance in the minimum amount of $17,692.00, with interest; declaring that [Father], for the purpose of determining his monthly income for maintenance purposes, must calculate same based upon his status as reflected on his annual tax returns...."

■ When reviewing a declaratory judgment, our standard of review is the same as in any other court-tried case. *McDermott v. Carnahan,* 934 S.W.2d 285, 287 (Mo. banc 1996). This Court will affirm the decision of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Father argues that the Agreement is facially uncertain because the Agreement is based upon a complicated formula, and neither the Agreement nor the dissolution decree defined the terms "monthly income," "taxes," or "health insurance." "Determination that an agreement is sufficiently definite is favored in the courts, so as to carry out the reasonable intention of the parties if it can be ascertained." *Maupin v. Hallmark Cards, Inc.,* 894 S.W.2d 688, 695 (Mo.App.1995). A maintenance provision of a decree is a valid and enforceable judgment even though facially uncertain in amount. *Allard v. Allard,* 856 S.W.2d 64, 69 (Mo.App. 1993). Here, the amount due under the Agreement is readily ascertainable at any given time by referencing Father's annual income. *See Payne v. Payne,* 635 S.W.2d 18, 22 (Mo. banc 1982). Contrary to Father's argument, there is no complicated formula involving ambiguous terms. The trial court in this case correctly determined that Father's maintenance obligation should be calculated based upon his monthly income less his actual tax obligation and not his bimonthly withholdings. Although "[t]he income factor involves external proof," it is within the power of the trial court to receive such proof, to determine the exact amount due, and then enforce its judgment. *Id.*

Father also argues that the trial court's computation of the amount of unpaid maintenance due is not supported by substantial evidence and is against the weight of the evidence. First, Father contends that the trial court did not make findings of fact regarding how it calculated the unpaid maintenance due. This claim is without merit. If Father desired specific findings on particular issues, he could have request-

ed them under Rule 73.01(a)(3).[3] That rule further provides that "[a]ll fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached."

■ Contrary to Father's argument, the award of unpaid maintenance in this case is supported by substantial evidence. Mother presented evidence at trial that Father paid her less than the ordered maintenance because Father, an accountant, manipulated his income in an attempt to pay her less maintenance than required by the Agreement. Mother testified that after Father quit paying child support in 1992, he still deducted the child support amount from his income before calculating 25 percent of his monthly income for maintenance. Mr. Bert Doerhoff, a CPA, testified that Father claimed himself as a single person on his W 2, with no deductions, to increase the amount of taxes withheld in order to reduce Mother's monthly maintenance payments. Mr. Doerhoff also testified that Father's withholding status on his federal income tax returns did not reflect his withholding status on his paychecks. Father claimed dependents on his federal income tax returns, resulting in income tax refunds ranging from $5,000 $9,000. Father did not pay Mother maintenance on this amount. Mr. Doerhoff testified that this method of withholding is indicative of an intent to reduce maintenance.

Father admitted that he had claimed zero deductions on his W 2 since 1980 and that the reason he has done so is based upon his interpretation of "what's allowable and not allowable." Father further testified, however, that he directed his employers to treat him as a single person without dependents for tax purposes and that one of the reasons he claimed zero deductions was to reduce his maintenance obligation. Father agreed that he owed Mother money if his maintenance obligation was determined by his actual filing status on his taxes, but stated that he did

not think that this outcome was reasonable.

It is clear from the judgment that the trial court relied on Mr. Doerhoff's calculations in Mother's Exhibit 2 for its determination that Father owed $28,963 in unpaid maintenance. In explaining his calculations in Exhibit 2, Mr. Doerhoff testified that he calculated Father's net monthly income from 1992–1998 by using his actual tax filing status at the end of those years. Mr. Doerhoff's testimony fully explains how he calculated the unpaid maintenance of $28,963 listed in Exhibit 2. "[A] trial court is free to believe or disbelieve all, part, or none of the testimony of any witness." *Burkhart v. Burkhart*, 876 S.W.2d 675, 678 (Mo.App.1994). The trial court based its decision on the evidence presented to it at trial. *State ex rel. Langiano v. Langiano*, 3 S.W.3d 886, 888 (Mo.App. 1999). The trial court's judgment was not against the weight of the evidence presented.

■ Therefore, this Court affirms the judgment for delinquent maintenance. In addition, this Court's affirming the denial of the judgment for past due child support precludes any deduction by Father for unpaid child support in the computation of maintenance due Mother. On remand, the trial court is directed to grant Mother leave to present additional evidence as to the computation of delinquent maintenance for the periods when no child support was paid.

### C. Father Cannot Deduct 401k Contribution From His Net Income

Father argues that the trial court erred in ordering that in the future Father "not consider as a deduction from his 'net income' any voluntary contribution to his 401k plan" because the order is not supported by substantial evidence and is against the weight of the evidence in that a

---

**3.** Now Rule 73.01(c).

401k contribution is not present income but rather future income.

Mr. Doerhoff testified that in preparing Mother's Exhibit 2, he added back into Father's income the 401k contributions Father had made. Mr. Doerhoff testified that it was necessary to add Father's 401k contributions back into his income to determine his total earnings because Father's total earnings were what he was paid by his employer, not what was left after Father made voluntary contributions to his 401k plan.

Father asserts that his 401k contributions should be deducted from his income before the calculation of 25 percent of his net income for maintenance because otherwise he could potentially be required to pay maintenance twice on the same income, when he contributes to his 401k plan and when distributions are made from his 401k. The only authority Father cites is *Keller v. Keller*, 877 S.W.2d 192 (Mo.App. 1994). Father argues that 401k contributions are postponed income, and that under *Keller*, postponed income is not taxable income for the current year. *Id.* at 196. The *Keller* case concerned the issue of when postponed capital gain recognition from the sale of a home is income to a party; as such, it is not applicable to this case. *Id.* Furthermore, in defining "income," that case relied on the particular definition contained in the parties' separation agreement. *Id.* at 195.

 In this case, the parties' Agreement specifically prohibited Father from intentionally and voluntarily acting to diminish his income to decrease payments of maintenance. " 'In contractual interpretation, the primary rule is to ascertain the intent of the parties and then give effect to that intent. When there is no ambiguity in the contract, the intent of the parties is to be gathered from [the contract] alone.' " *Bolton v. Bolton*, 950 S.W.2d 268, 271 (Mo. App.1997) (quoting *Marshall v. Pyramid Development Corp.*, 855 S.W.2d 403, 406 (Mo.App.1993)). Courts presume that the words used are intended to have their natural and ordinary meaning. *Id.* The Agreement plainly stated that Father's monthly income was "less taxes and health insurance costs for Kevin." The Agreement also stated that Father was to "refrain from any intentional and voluntary act which would result in his income being diminished." Father has attempted to circumvent the plain meaning of the Agreement by making voluntary 401k contributions in order to lessen his income. While Father is entitled to deduct money from his wages and contribute it to his 401k account, his contribution to a 401k account does not reduce his income for maintenance computation purposes.

 The provision in the trial court's judgment prohibiting Father from deducting 401k contributions in the computation of maintenance was necessary due to Father's misinterpreting the Agreement to his benefit. The trial court did not err in including the clarifying language in its judgment.

### D. Mother Should Have Received Interest On Unpaid Maintenance

Mother argues in her cross-appeal that the trial court erred in failing to award interest on the delinquent maintenance owed her by Father in that section 454.520 makes the award of interest on delinquent maintenance mandatory. Mother sought a declaratory judgment that Father owed her for delinquent maintenance and interest thereon and asked the trial court to enter a judgment determining the interest due. While the trial court did award Mother $28,693 in unpaid maintenance, it did not award Mother interest on that sum.

 The standard of review for the denial of a declaratory judgment is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Opponents of Prison Site, Inc. v. Carnahan*, 994 S.W.2d 573, 577 (Mo.App.1999). This Court will affirm the decision of the trial court "unless there

is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy*, 536 S.W.2d at 32.

■ Section 454.520 governs the accrual of interest on delinquent maintenance:

2. All delinquent child support and maintenance payments which have accrued based upon judgments or orders of courts of this state entered after September 28, 1979, but prior to September 1, 1982, shall draw interest at the rate of nine percent per annum through August 31, 1982, and thereafter at the rate of one percent per month.

\* \* \* \*

4. The interest imposed under subsections 1 to 3 of this section shall be simple interest. Interest shall accrue at the close of the business day on the last day of each month and shall be calculated by multiplying the total arrearage existing at the end of the day, less the amount of that month's installments, by the applicable rate of interest. The total amount of interest collectible is the sum of the interest which has accrued on the last day of each month following the first delinquent payment. This interest computation method shall apply to all support and maintenance orders, regardless of the frequency of the installments required by the court.... *The interest imposed under · this section shall automatically accrue and attach to the underlying support or maintenance judgment or order*, and may be collected together with the arrearage, except that no payment or collection shall be construed to be interest until the entire support arrearage has been satisfied. Such interest shall be considered support or maintenance for the purposes of exemptions, restrictions on amounts which may be recovered by garnishment, and nondischargeability in bankruptcy.

(Emphasis added). "Section 454.520.4's provision that interest 'shall automatically accrue and attach to the underlying support or maintenance judgment or order' makes assessment of interest for unpaid child support mandatory." *Johnson v. Johnson*, 965 S.W.2d 943, 944 (Mo.App. 1998) (quoting *Baird v. Baird*, 843 S.W.2d 388, 390 (Mo.App.1992)). This rule applies equally to delinquent maintenance. "Where a statute provides that interest 'shall' be paid or received, a court has no discretion to refuse to award interest as directed by the statute." *Baird*, 843 S.W.2d at 390.

In this case, Mother should have been awarded interest on the $28,693 in delinquent maintenance. Thus, the trial court erred in failing to award Mother interest on the maintenance arrearage owed her by Father. The cause is remanded to the trial court for a determination of the amount of interest owed on the delinquent maintenance based upon section 454.520.

## II. Child Support

### A. Father's Obligation to Pay Child Support Should Be Extended

With regard to child support, the Agreement, incorporated into the 1980 dissolution decree, provided as follows: "[Father] agrees to pay [Mother] as and for child support of their minor child the sum of Two Hundred Dollars ($200.00) per month, beginning November 1, 1980, the first day of every month thereafter until said child shall reach the age of twenty-one (21) years or be emancipated, whichever shall first occur[.]" The Agreement also provided that "[Father] shall provide a health insurance policy for Kevin with coverages not less than those presently in existence. Medical expenses or dental expenses not covered by such insurance shall be paid one-half by Husband and one-half by Wife."

When Kevin was thirteen, as stated previously, he was diagnosed with encephalomyeloradiculopathy, a cognitive impairment that has left him completely and permanently disabled. Father paid child

support to Mother up until 1992, when Kevin turned 21. Wife did not request an extension of Father's child support obligation until filing a motion to modify child support in May of 1998. Kevin currently resides in a residential care facility that provides him with 24 hour care. He receives $500 per month in Supplemental Security Income (SSI) and approximately $360 per month from Medicaid, all of which goes to his care at the residential care facility.

Mother argues in her cross-appeal that the trial court erred in denying her request for declaratory judgment that Father owed Mother for past child support and reimbursement of insurance premiums paid by Mother from 1992–1998, in that Kevin was not emancipated when Father stopped paying child support. Mother also argues in her cross-appeal that the trial court erred in denying her motion to modify child support in that the parties' child qualifies for continuing support pursuant to section 452.340.4, RSMo Supp. 1998.

■ The standard of review for both the denial of a declaratory judgment and for modification of a dissolution decree is governed by *Murphy*, 536 S.W.2d at 32; *Opponents of Prison Site, Inc.*, 994 S.W.2d at 577; and *Speight v. Speight*, 933 S.W.2d 879, 881 (Mo.App.1996). This Court will affirm the decision of the trial court "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy*, 536 S.W.2d at 32.

■ Section 452.370.1, RSMo Supp.1998, provides that an order of child support may be modified "upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Modification of child support provisions is necessary when the support provisions conflict with the law. *Davis v. Helton*, 796 S.W.2d 409, 411 (Mo.App.1990). In 1988, the Missouri legislature amended section 452.340 to provide a basis for extending a parent's support obligation past the age of presumed emancipation if the child was mentally and physically incapacitated to support himself, insolvent, and unmarried. *Sec. 452.340.4.* Mother argues that the 1988 revisions to section 452.340 effectively modified the parties' decree as to child support and thereby extended Father's duty to pay child support past Kevin's 21st birthday. A parent's duty to continue supporting a physically or mentally incapacitated child arises from the child's helpless condition, and this was of course true even before the 1988 revisions to section 452.340. *Fower v. Fower Estate*, 448 S.W.2d 585, 586[1] (Mo.1970). However, prior to 1988, this duty was owed not to the custodial parent, but to the child, who had to bring a separate suit against the parent or intervene in the dissolution decree to give the trial court jurisdiction. *Racherbaumer v. Racherbaumer*, 844 S.W.2d 502, 503 (Mo.App.1992). Subsection 4 now provides that "[i]f the child is physically or mentally incapacitated from supporting himself and insolvent and unmarried, the court may extend the parental support obligation past the child's eighteenth birthday." *Sec. 452.340*, RSMo Supp.1998. In order for the exception in section 452.340.4 to apply, the court first must find that the child is 1) physically or mentally incapacitated from supporting himself; 2) insolvent; and 3) unmarried. *Speight*, 933 S.W.2d at 882.

■ Father admitted that Kevin is incapacitated, unmarried and insolvent in his amended answers to Mother's request for admissions. Father now argues on appeal, however that Kevin is not insolvent. Admissions bind a party, unless the court permits withdrawal or amendment of the admission. *Felton v. Hulser*, 957 S.W.2d 394, 397 (Mo.App.1997). Since Father did not seek to withdraw or amend his admission, he is bound by that admis-

sion. Even if he were not, the weight of the evidence supports a finding that Kevin was insolvent. "[I]nsolvency in the context of sec. 452.340.4, is 'the inability to pay debts as they come due in the ordinary course of business.'" *King v. King*, 969 S.W.2d 903, 907 (Mo.App.1998) (quoting *In re the Marriage of D.R.S.*, 817 S.W.2d 615, 618 (Mo.App.1991)). "Showing a child's insolvency under section 452.340.4 requires some evidence of the child's earnings, living expenses, and ability to meet obligations." *State ex rel. Albert v. Sauer*, 869 S.W.2d 853, 855 (Mo. App.1994). The evidence adduced at trial was that Kevin contracted a brain virus when he was thirteen years old that left him chronically disabled. Kevin lives at a residential care facility where he is provided meals, personal care, medical assistance and exercise. He will need such care for the rest of his life and will never be able to live on his own. Although Kevin has been employed in the past, the most he has made in a year has been under $1,200. The $500 per month in SSI and the approximately $360 per month Kevin receives from Medicaid pays for his care at the residential care facility. Mother testified that this money does not cover clothing, personal hygiene items, haircuts or other personal needs. Mother testified that she spends approximately $400 a month on Kevin's needs.

■ Father argues that Kevin is not insolvent because of the approximately $860 per month he receives from SSI and Medicaid. In *Racherbaumer*, 844 S.W.2d at 505, and *King*, 969 S.W.2d at 907, incapacitated adult children were found to be insolvent even though they received SSI and Medicaid or Medicare payments, lived at home, *and* received regular paychecks. Because the weight of the evidence shows that Kevin is incapacitated, unmarried and insolvent, section 452.340.4 is applicable. Father's child support obligation should be extended.

■ Since Mother has proven that Kevin is incapacitated under section 452.340.4, the trial court's judgment denying Mother's motion to modify child support is reversed and the cause is remanded for the trial court to enter an order extending Father's obligation to pay child support. The trial court in this case has jurisdiction to extend child support under sec. 452.340.4 even though Kevin had already reached the age of majority when Mother filed her motion to modify child support. *Racherbaumer*, 844 S.W.2d at 504 ("we believe that the legislature must have intended to grant jurisdiction to the divorce court to award child support for *all* mentally incapacitated children regardless of age."). On remand, the trial court should determine if the amount of child support should be modified based on the changed circumstances of the parties. The trial court should also determine whether to make the order of child support retroactive to the date of the filing of the motion to modify child support and personal service.

■ In addition to asking for a modification of the current child support, Mother also prayed for a judgment for past due child support to collect child support from the date Father stopped paying to the present. Because there had been no judicial determination that Kevin was physically or mentally incapacitated, triggering a support obligation under section 452.340.4, Father's obligation under the order for child support in the decree of dissolution did not continue past Kevin's age of majority. Mother had the ability to file a motion to modify at the time Kevin reached the age of majority, but she did not do so until May of 1998. "A trial court has no authority to modify child support retroactive to a date before the filing of the motion to modify and service of summons." *Fulton v. Adams*, 924 S.W.2d 548, 553 (Mo.App. 1996). "The order may be modified only as to support or maintenance installments which accrued subsequent to the date of personal service." *Sec. 452.370.6*, RSMo Supp.1998. The judgment denying Moth-

er's request for past due child support is affirmed.

## B. Father Does Not Owe Mother Reimbursement For Health Insurance Premiums

Mother also sought a declaratory judgment that Father owes her reimbursement for health insurance premiums paid by Mother from 1992–1998. Mother sought a modification of child support pursuant to section 452.370, RSMo Supp.1998, claiming that Father had failed to provide health insurance and that the medical and physical needs of Kevin had increased dramatically. The Agreement of the parties stated in paragraph 4 that "[Father] shall provide a health insurance policy for Kevin with coverages not less than those presently in existence. Medical expenses or dental expenses not covered by such insurance shall be paid one-half by Father and one-half by Mother." Father paid health insurance premiums for Kevin until 1992, when he turned 21. From 1992–98, Kevin received Medicare A and Medicare B as well as a Blue Cross and Blue Shield supplement. Mother also provided Kevin with private health insurance during this time. In 1994, Kevin started to receive Medicaid. Mother stopped providing private health insurance to Kevin in 1998, so he would not lose his Medicaid coverage. Mother testified that since 1992 there have been only a few medical bills not paid through Medicare or Medicaid, but that she had no idea how much she has paid out of pocket since 1992 for his medical expenses.

■ Reading the health insurance portion of paragraph 4 in the context of the whole paragraph, Father's obligation to provide health insurance co-existed with his obligation to pay child support. When Kevin turned 21 in 1992, Father was no longer obligated to provide health insurance, just as he was no longer obligated to pay child support. Mother did not file her motion to modify child support until 1998, requesting the extension of Father's obli-

gation to support Kevin. Mother can only seek reimbursement from the time of the filing of her motion to modify in 1998 prospectively. *See Fulton,* 924 S.W.2d at 553. Mother had already stopped paying for private insurance for Kevin in 1998, because she testified that Kevin's Medicaid coverage is better than what he would have received if he had private insurance. Nevertheless, because this Court found that Father's child support obligation should be extended under section 452.340.4, RSMo Supp.1998, and the cause is being remanded to the trial court for entry of an order of child support and a determination of the whether the amount of child support should be modified, we also remand for a determination of whether the prior provision requiring Father to provide health coverage should be modified.

## III. Attorney's Fees

■ Finally, Father argues that the trial court erred in ordering him to pay $5,000 in attorney's fees. Sec. 452.355.1, RSMo Supp.1998, authorizes an award of attorney's fees for "the cost to the other party of maintaining or defending any proceeding pursuant to section 452.300 to 452.415." It is within the trial court's discretion whether or not to award attorney's fees under section 452.355. *Glenn v. Glenn,* 930 S.W.2d 519, 525 (Mo.App.1996). To demonstrate an abuse of discretion, the complaining party must show the trial court's decision was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. *Id.* Since Mother was defending Father's motion to terminate or modify maintenance and proceeding on her motion to modify child support, she was both defending and maintaining proceedings pursuant to section 452.340, RSMo Supp.1998. Furthermore, the record reveals that Father's conduct during the proceedings caused Mother to incur additional attorney's fees. Father fails to demonstrate how the trial

court abused its discretion in awarding attorney's fees to Mother.

## Conclusion

This Court affirms in part and reverses in part the trial court's judgment as follows: (1) the judgment of the trial court dismissing Father's motion to terminate or modify maintenance is affirmed; (2) the trial court's judgment ordering that Father not deduct from his net income any voluntary contributions to his 401k plan in future computations of maintenance is affirmed; (3) the trial court's judgment denying Mother interest on the unpaid maintenance owed her by Father is reversed, and the cause is remanded to the trial court for a determination of the amount of interest owed on the delinquent maintenance; (4) the trial court's judgment denying Mother's motion to modify child support is reversed and the cause is remanded to the trial court for entry of a judgment extending child support based upon Kevin's physical and mental incapacity and for an adjudication of whether the amount of child support should be modified; (5) on remand, the court should also determine whether the child support orders are retroactive to the date of filing the motion to modify child support; (6) while the trial court did not err in denying Mother reimbursement for health insurance premiums she paid from 1992–1998, on remand the trial court should determine whether the prior order that Father provide health coverage, now extended, should be modified; and (7) the trial court's judgment ordering Father to pay Mother's attorneys fees is affirmed.

All concur.