Kathy KELLER, Appellant,

v.

John B. KELLER, II, Respondent.

WD 79931

Missouri Court of Appeals,
Western District.

April 25, 2017

Anthony W. Bonuchi, Kansas City, MO, for appellant.

Sara C. Michael, Jefferson City, MO, for respondent.

Before Division Three: Anthony Rex Gabbert, Presiding Judge, Victor C. Howard, Judge and Cynthia L. Martin, Judge

Cynthia L. Martin, Judge

Kathy Keller[1] ("Mother") appeals from a judgment modifying her child support obligation to continue support for a child beyond the age of eighteen because the child was determined to be mentally incapacitated from supporting himself and insolvent. We affirm.

## Factual and Procedural Background[2]

Mother and John Keller, II ("Father") divorced in 1999. They had two children

---

1. The record indicates that Mother goes by Kathy Kay. Our caption and opinion refer to her as Kathy Keller as that is how Mother is referenced in the trial court's Judgment.

2. We have adopted some of the factual information from a previous appeal in this matter, *Kay v. Keller*, 462 S.W.3d 748 (Mo. App. W.D. 2015), without further citation.

during the marriage: John Keller, III ("Son"), born September 29, 1992, and Kathianne Keller ("Daughter"), born January 2, 1995. Mother and Father were awarded joint legal custody. In 2000, the dissolution decree was modified by stipulation to require Father to pay Mother $1,600 per month for child support, as both children lived primarily with Mother. In 2010, Son began living with Father. The dissolution decree was again modified by stipulation in 2011. The modification transferred physical custody of Son to Father. Father was ordered to pay Mother $596 per month in child support, representing the difference between Father's $931 child support obligation for Daughter and Mother's $335 child support obligation for Son.

In July 2013, Father filed a motion to modify child support. Father alleged that Daughter had become emancipated. And Father alleged that although Son was over the age of eighteen, he was not emancipated because of diagnoses of autism, generalized anxiety disorder, obsessive compulsive disorder, and bipolar mental illness received years earlier. Father argued that Mother's child support obligation for Son should continue because Son was mentally incapacitated from supporting himself, insolvent, and unmarried, pursuant to section 452.340.4.[3] Father also argued Mother's child support obligation for Son should be increased consistent with Mother's increased income.

Father's motion to modify asserted that due to Son's mental condition, Son was under the full time care of a psychologist and psychiatrist, took a number of medications, and was without the means or ability to be self-supporting. Father also stated that Son attempted classes at Co-lumbia College after high school, but was only partially successful and had not enrolled in or attended classes for six months as of the filing of Father's motion. Additionally, Father alleged that, on or about November 21, 2012, Son was determined totally disabled by the Social Security Administration and that the determination found Son unable to support himself through regular employment.

Mother contested Father's motion to modify with respect to Son, but not with respect to Daughter, as Mother agreed Daughter was emancipated. Mother denied that there was any basis for the trial court to extend her child support obligation for Son based on his alleged status as mentally incapacitated from supporting himself, insolvent, and unmarried.

Mother then filed two Affidavits for Termination of Child Support, one for Daughter and one for Son. In the Affidavit for Termination of Child Support for Son, Mother alleged that Son was twenty-one years of age and had failed to meet the requirements for continued support for a child pursuing post-secondary education as provided by section 452.340.5. Mother did not check an available box which would have alleged that Son should be declared emancipated because "[t]he child is not physically or mentally incapacitated from supporting himself or herself, and the child's circumstances do not manifestly dictate that child support should continue."[4] Father responded to Mother's Affidavits, agreeing Daughter was emancipated, but contesting that Son was emancipated, noting his pending motion to modify which alleged to the contrary.

---

3. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

4. Mother completed a form affidavit that listed multiple grounds to terminate child support and instructed her to "Check **all** which are applicable." (Emphasis in original).

The trial court scheduled an evidentiary hearing on June 6, 2014. At the beginning of the hearing, Mother filed a motion for summary judgment. Mother alleged that because Son had already turned eighteen before Father filed his motion to modify, and because Son had not continued his post-secondary education to defer emancipation to the age of twenty-one, Son was emancipated as a matter of law before Father filed his motion to modify. The trial court granted Father time to respond to the motion for summary judgment, but proceeded with the evidentiary hearing.

The trial court ultimately granted Mother's motion for summary judgment. We reversed, noting that Father was not barred from filing a motion to modify child support merely because Son had already turned eighteen,[5] and finding that although the evidence supported Mother's Affidavit seeking to terminate support because Son had not continued his education after he turned eighteen, genuine issues of fact remained in dispute regarding whether Son was mentally incapacitated from supporting himself and insolvent. *Kay v. Keller*, 462 S.W.3d 748, 755 (Mo. App. W.D. 2015).

Following remand, the trial court conducted an additional evidentiary hearing on December 8, 2015. The evidence from the combined hearings established that Son was diagnosed with autism when he was about three years old, and with generalized anxiety disorder, obsessive compulsive disorder, and bipolar disorder in his early-to-mid teenage years. Shortly after Son began living with Father in 2010, Father filed an application to seek Social Security disability benefits. Mother was unaware of this fact, and had no contact with Son after Son began living with Father.[6] When the dissolution decree was modified in 2011, Son was already eighteen, though Mother believed Son would continue his post-secondary education.

During the second hearing, Father sought to introduce records from the Social Security proceeding that determined Son's disability. Mother objected, arguing that the records contained hearsay, and that the findings were not binding on the court. The trial court permitted the records to be introduced "for purposes of [Son] getting Social Security disability and what [the Social Security Administration] found," but agreed that the Social Security Administration's decision was not binding on the trial court.[7]

Father testified about Son's health history and day-to-day routine. In treating his diagnoses, Son has been prescribed numerous medications and has been under the care of a psychologist and psychiatrist throughout his life. Son graduated high school and enrolled in and passed three college courses, though he required accommodations.

Father assisted Son in finding employment. Son began vocation rehabilitation services with the MORE Group. Eventual-

---

**5.** In *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 396–98 (Mo. banc 2001), the Supreme Court found continued child support should be paid pursuant to section 452.340.4 where the mental incapacity pre-existed the child's ordinary date of emancipation, even though the motion requesting the continued payment of child support was not filed until six years after the child turned twenty-one.

**6.** The record suggests the lack of contact with Mother was Son's choice.

**7.** Father had requested the trial court take judicial notice of the Social Security Administration's determination during the first hearing in June 2014. Mother's only objection was that the determination was made after Son turned eighteen years old. The records were received into evidence at the June 2014 hearing over this objection.

ly, Son got a job at a fast-food restaurant. Son worked about two and a half hours per day on Fridays, Saturdays, and Sundays. For the first month or so, the MORE Group provided Son with job coaching.

Father testified that following each work shift, Son would suffer severe periods of "decompensation." During these periods, Son would remain in his room and rock himself back and forth, on and off, for hours and throughout the night. Son would stay in his room following a work shift until he needed to leave for the next day's shift. These periods of decompensation, according to Father, would worsen after consecutive days of work, and would include periods lasting up to two days following three consecutive days working two-to-three-hour shifts. This behavior increased over time. Son worked at the fast-food restaurant for about a year before quitting, telling Father that it was too stressful. Since leaving that employment, Son's decompensation behavior has continued, including periods of isolation, rocking, and sleepless nights. Son recently begun searching for another job with the help of the MORE Group. However, he has not been successful, and has reportedly missed appointments, and arrived to meetings exhibiting poor personal hygiene. Father testified that he did not believe Son was capable of working an eight-hour day or any more hours than he worked at the fast-food restaurant.

In his daily life, Father testified that he has worked with Son to teach him ordinary skills such as driving, buying gas, grocery shopping, and getting his hair cut. While Son is able to drive, even to make trips from Jefferson City to Columbia, Son once burned out an engine because there was no oil in the car, despite a dashboard light being on. Son has trouble counting money, but is able to use and pay his own credit card. Son has learned to do his own laundry after receiving specific instructions from Father, and can cook simple meals using a microwave or a skillet.

By the time of the second hearing, Son was receiving $734 per month in disability benefits. When Son worked at the fast-food restaurant, he was paid approximately $200 per month. Son's employment earnings resulted in a calculated offset in the disability benefits he was receiving at that time. Father explained outside income paid directly to Son results in a partial offset against Son's disability benefits.

Father testified that Son's disability check is deposited into a special account. Father filed an Income and Expense Statement along with his motion to modify which claimed expenses incurred by him and related to Son in the amount of $760 per month. Father testified that he takes $250 per month from Son's disability benefits to cover a portion of Son's household expenses, including rent, utilities, cable, internet, clothing, and automobile maintenance. Father generally testified that he pays out of his own pocket for Son's other expenses in excess of his disability benefits. Father testified that Son uses approximately $500 per month from his disability benefit to pay for gasoline, eating out, and other personal needs.

Mother testified that Son should be able to find suitable employment. Mother based her testimony on her experience assisting those with disabilities to live independently, as Mother was the executive director of the Center for Independent Living in Warrensburg, Missouri. Mother testified that she has people who work for her who have similar diagnoses as Son. Mother testified that there were additional resources available to Son beyond those he has utilized.

The trial court entered its Judgment granting Father's motion to modify, and denying Mother's Affidavit to Terminate

Son's child support.[8] The trial court found that due to Son's diagnosis and mental condition requiring him to be under the full time care of a psychologist and a psychiatrist, Son is "without the means or ability to be self-supporting and sufficient and is therefore not emancipated as defined by Section 452.340.4." The trial court specifically found Son to be mentally incapacitated from supporting himself, insolvent, and unmarried. The trial court calculated Form 14 support to be paid by Mother in the amount of $432 a month, and awarded monthly child support in that amount, along with a child support arrearage in the amount of $18,479. The trial court ordered the child support be paid to the John Bidwell Keller, III Self-Settled Special Needs Trust.

This timely appeal follows.

### Standard of Review

We review a judgment modifying a dissolution decree in accordance with *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Speight v. Speight*, 933 S.W.2d 879, 881 (Mo. App. W. D. 1996). We must affirm the trial court's judgment "unless it is not supported by substantial evidence, or it is against the weight of the evidence, or it erroneously declares or applies the law." *Id.*

### Analysis

Mother raises two points on appeal, both of which challenge the trial court's finding that Son was not emancipated pursuant to section 452.340.4. In her first point, Mother argues that it was against the weight of the evidence to find Son mentally incapacitated from supporting himself. In her second point, Mother argues that no substan-

**8.** The trial court deemed Daughter emancipated as of the summer of 2013, a matter that

tial evidence supported the finding that Son was insolvent.

### Point One

Mother's first point on appeal contends that it was against the weight of the evidence for the trial court to find that Son was mentally incapacitated from supporting himself. A trial court's judgment is against the weight of the evidence only when the court "could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment." *Ivie v. Smith*, 439 S.W.3d 189, 206 (Mo. banc 2014). Under this standard, "[w]hen the evidence poses two reasonable but different conclusions, appellate courts must defer to the circuit court's assessment of that evidence." *Id.* Likewise, "an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong." *Id.*

When reviewing the record under this standard, an appellate court "defers to the circuit court's findings of fact when the factual issues are contested and when the facts as found by the circuit court depend on credibility determinations." *Id.* Our deference to the trial court recognizes that the trial court was "free to believe all, some, or none of the evidence offered to prove a contested fact, and [our] court will not re-find facts based on credibility determinations through [our] own perspective." *Id.* "This includes facts expressly found in the written judgment or necessarily deemed found in accordance with the result reached." *Id.* (citing Rule 73.10(c)).

Pursuant to sections 452.340.3(5) and (6) and section 452.340.5, a parent's obligation to make child support payments ordinarily

is not contested by the parties.

terminates when the child reaches either the age of eighteen or the age of twenty-one assuming qualifying enrollment in a post-secondary education program. However, both benchmarks for termination of the obligation to make child support payments are expressly subject to a trial court's authority to extend the parental support obligation pursuant to section 452.340.4. *See* section 452.340.3(5)–(6). Section 452.340.4 provides that "[i]f the child is physically or mentally incapacitated from supporting himself and insolvent and unmarried, the court may extend the parental support obligation past the child's eighteenth birthday." Section 452.340.4.

■ "A parent's duty to continue supporting a physically or mentally incapacitated child arises from the child's helpless condition ...." *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 397 (Mo. banc 2001). Prior to amendment of section 452.340 in 1988, "this duty was not owed to the custodial parent, but to the child, who had to bring a separate suit against the parent or intervene in the dissolution decree to give the trial court jurisdiction." *Id.* (citing *Racherbaumer v. Racherbaumer*, 844 S.W.2d 502, 503 (Mo. App. E.D. 1992)). Following the 1988 amendment to section 452.340, a parent's child support obligation is subject to modification and can continue "past the age of presumed emancipation if the child [is] mentally and physically incapacitated to support himself, insolvent, and unmarried." *Id.*

■ In order to determine if a child is mentally incapacitated from supporting himself, "the child's mental incapacity must impair [the] child's ability to support himself." *State ex rel. Albert v. Sauer*, 869 S.W.2d 853, 855 (Mo. App. W.D. 1994). To establish the requisite mental incapacity, the evidence introduced "might include medical testimony, letters of guardianship, living expenses and ability to meet obligations." *Speight*, 933 S.W.2d at 882.

Here, Mother does not challenge that Son is mentally incapacitated. Mother agrees that Son has been diagnosed with autism, obsessive compulsive disorder, and generalized anxiety disorder. Mother testified during the first hearing that until September of 2010, Son had lived with her his entire life, and could not have lived on his own at the time he left her home. *Kay*, 462 S.W.3d at 754. And during the first hearing, Mother did not contest that Son is eligible for disability benefits, though she did not approve applying for them because she believed it was akin to "giving up." *Id.* at 754–55.

Mother does challenge whether Son's mental incapacity prevents him from supporting himself. There is contested evidence on this point. Mother's testimony highlighted her experience with disabled individuals, and her belief based on that experience that there are several jobs Son would be able to perform. Father's evidence highlighted Son's difficulties with his part-time job, including the significant decompensation he suffered after each short shift and the increased severity of Son's decompensation after working consecutive days. Father testified about the anxiety and difficulties Son subsequently experienced in trying to locate another job, and his continued severe decompensation behavior.

We cannot say that the trial court erred in crediting Father's first-hand testimony and other evidence directly addressing Son's condition over Mother's generalized testimony about her experiences with disabled individuals. Mother acknowledged during the first hearing that "she has not spoken to or seen Son since he left her home and has no firsthand knowledge of Son's present capabilities." *Kay*, 462 S.W.3d at 754. Although there was evi-

dence that Son has learned to perform certain skills that permit him a measure of independence, Son's decompensation behavior when faced with the stress of a work environment suggests he is unable to supplement his financial resources beyond his disability benefits in any meaningful way.

Though Mother complains that Father's testimony that Son could not support himself was merely conclusory, we disagree. Mother relies on *In re Marriage of Brethauer*, 566 S.W.2d 462, 465 (Mo. banc 1978) (holding that a party's conclusion that a retirement plan was "not vested" was not substantial evidence sufficient to rebut a statutory presumption that the plan was marital property). But Father's testimony is distinguishable from the conclusory testimony at issue in *In re Marriage of Brethauer*. Father's testimony that he did not believe Son could support himself followed detailed testimony explaining why Father had reached that conclusion.

Mother also argues that the Social Security Administration's determination of disability was not admitted as evidence that Son could not support himself for purposes of section 452.340.4, and thus could not have been relied on for that purpose. We agree. However, there is no reason to believe that the trial court considered the Social Security records for the purpose of determining whether Son could support himself, particularly given the trial court's admission of the records for a limited pur-

pose and its acknowledgment on the record that the Social Security Administration's determination was not binding on the court. In any event, sufficient evidence exists independent of the Social Security Administration's determination to support the conclusion that Son is mentally incapacitated from supporting himself.

In her Reply Brief, Mother asserts that "[l]ay testimony about a child's condition is generally not enough" to show mental incapacity. Mother cites *Speight*, 933 S.W.2d at 882, in support of this assertion. Mother's reliance on *Speight* is unavailing. In *Speight*, we addressed the sufficiency of the evidence to establish a mental incapacity, and found insufficient for this purpose "lay testimony that there is something 'emotionally wrong' with [the child], and he is 'full of anger.'" *Id.* Here, it is uncontested that Son suffered a mental incapacity. Mother's only point of contention is the extent to which Son's mental incapacity impairs his ability to support himself—a topic *Speight* did not address. Father's first-hand accounts of Son's demonstrated behaviors and limitations are relevant to assessing whether Son's mental incapacity impacted his ability to support himself.

In short, the trial court heard competing evidence regarding the effect of Son's mental incapacity. Though a contrary conclusion could have been reached given Mother's testimony, the evidence also permitted the trial court to reasonably find that Son's mental incapacity prevented him from supporting himself.[9] "When

---

9. Mother argues that the evidence to establish an adult child's mental incapacity must be "substantial," and argues that this is a heightened burden of proof, citing *Sullins v. Knierim*, 308 S.W.3d 241, 247 (Mo. App. E.D. 2010) and *Speight v. Speight*, 933 S.W.2d 879, 882 (Mo. App. W.D. 1996). Our review of the cases cited by Mother, and others asserting a similar proposition, suggests that this proposition—that incapacity under section

452.340.4 requires "substantial" evidence, a heightened burden of proof—seemingly grew from misinterpretations of *State ex rel. Albert v. Sauer*, 869 S.W.2d 853, 855 (Mo. App. W.D. 1994), which does not stand for the proposition. *See Hoffman-Francis v. Francis*, 282 S.W.3d 392, 395 (Mo. App. W.D. 2009); *Hicks v. Quednow*, 197 S.W.3d 217, 220 (Mo. App. W.D. 2006); *King v. King*, 969 S.W.2d 903,

the evidence poses two reasonable but different conclusions, appellate courts must defer to the circuit court's assessment of that evidence." *Ivie*, 439 S.W.3d at 206.

Point One is denied.

## Point Two

In her second point on appeal, Mother argues that the trial court erred because there was no substantial evidence to support finding that Son was insolvent.

"Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment." *Ivie*, 439 S.W.3d at 199. "Evidence has probative force if it has any tendency to make a material fact more or less likely." *Id.* A trial court's judgment is not supported by substantial evidence when "there is no evidence in the record tending to prove a fact that is necessary to sustain the circuit court's judgment as a matter of law." *Id.* at 200. In determining whether substantial evidence supported the trial court's decision, "[w]e view the evidence and any reasonable inferences therefrom in the light most favorable to the court's decision and disregard all contrary evidence and inferences." *Wood v. Wood*, 391 S.W.3d 41, 45 (Mo. App. W.D. 2012). A trial court is "free to believe or disbelieve all or any part of the witnesses' testimony." *Id.*

In addition to finding a child mentally incapacitated from supporting himself, section 452.340.4 requires a finding that the child is insolvent.[10] In the context of section 452.340.4, insolvency is "the inability to pay debts as they come due in the ordinary course of business." *Lueckenotte*, 34 S.W.3d at 398 (quoting *King v. King*, 969 S.W.2d 903, 907 (Mo. App. W.D. 1998)). A showing of a child's insolvency under section 452.340.4 "requires some evidence of the child's earnings, living expenses, and ability to meet obligations." *Id.* (quoting *Albert*, 869 S.W.2d at 855). Insolvency of a child for purposes of section 452.340.4 also comprehends, however, the child's ability to support themselves outside the home. *King*, 969 S.W.2d at 906–07 (finding adult child insolvent based on evidence that child could not meet his financial needs without help from his mother, and was not capable of earning an income sufficient to live outside the home). "The ability to pay debts as they become due not only means the ability to cover the expenses of those debts, but also the physical ability to actually pay them." *Braddy v. Braddy*, 326 S.W.3d 567, 573 (Mo. App. E.D. 2010). "The same facts that establish the child's inability to support himself can establish the child's inability to meet obligations." *Albert*, 869 S.W.2d at 855.

905 (Mo. App. W.D. 1998); *Speight*, 933 S.W.2d at 882.

Regardless, we need not further address Mother's contention. Nor need we address Mother's implicit assumption that Father bore the burden to prove Son was not emancipated. *Cf. Kay*, 462 S.W.3d at 753 (holding "[e]mancipation is never presumed, and the burden is upon the party asserting it to show facts proving the emancipation") (quoting *Dowell v. Dowell*, 73 S.W.3d 709, 712 (Mo. App. W.D. 2002)); *Wilkins v. Wilkins*, 300 S.W.3d 594, 598 (Mo. App. E.D. 2009); *Jarrett v. Cornwell*, 130 S.W.3d 752, 759 (Mo. App.

W.D. 2004); *Randolph v. Randolph*, 8 S.W.3d 160, 164 (Mo. App. W.D. 1999). Whatever the burden of proof at trial, our standard of review in determining whether a trial court's findings or conclusions are supported by the weight of the evidence is the same. *Ivie v. Smith*, 439 S.W.3d 189, 199 (Mo. banc 2014) ("The same standard of review applies in all types of court-tried cases regardless of the burden of proof at trial.").

10. Section 452.340.4 also requires a finding that the child is unmarried, an issue that is not contested in this case.

Father presented evidence of Son's earnings from his disability benefits and his past wages from the fast-food restaurant. Father explained that Son's outside earnings result in a reduction in his disability benefits by a partial, calculated amount. And Father's evidence explained that in any event, Son is unable to tolerate working full-time or more than the very few hours a week he worked at the fast-food restaurant. Son's income at the time of the second hearing was his monthly disability benefit in the amount of $734.

Father's Income and Expense Statement reported monthly expenses Father incurs in the amount of $760 attributable to Son. Father testified that he applies $250 from Son's disability benefit each month to offset household expenses attributable to Son, such as rent, utilities, cable, internet, car maintenance, and clothing. Additionally, Father testified that Son is given access to approximately $500 each month from his disability benefit for gas, food, and other discretionary spending. Father testified that Son uses and pays his own credit card, presumably from this monthly distribution. Father testified that he pays other expenses for Son in excess of his disability benefit out of his own pocket.

The evidence thus suggests that Son's reasonable living expenses are approximately $1260 a month, while his income is only $734 a month. This alone supports the conclusion that Son is unable to meet his obligations. *See Lueckenotte*, 34 S.W.3d at 398 (holding evidence sufficient to find insolvency where child received $860 per month from SSI and Medicaid, which covers his costs at a residential care facility, but not the cost of his "clothing, personal hygiene items, haircuts or other personal needs"). Moreover, it is plain from the evidence that Son is unable to meet his financial needs without Father's help. *King*, 969 S.W.2d at 906–07 (holding evidence sufficient to find insolvency based on child's inability to earn an income sufficient to live outside the parent's home). It is highly unlikely that the $250 per month Father takes from Son's disability benefits to cover rent, utilities, cable, internet, food and clothing would cover these same expenses if Son were living outside the home. *Braddy*, 326 S.W.3d at 573 (holding insolvency also includes the physical ability to pay debts associated with supporting oneself); *see also Racherbaumer*, 844 S.W.2d at 505 (holding evidence sufficient to find insolvency though child lived at home and received disability benefits and a regular paycheck).

We reject Mother's contention that no substantial evidence supports the conclusion that Son is insolvent.[11]

Point Two is denied.

## Conclusion

The trial court's Judgment is affirmed.[12]

All concur

---

11. During oral argument, Mother conceded that Son's current circumstances render him insolvent.

12. Mother has not contested the amount of child support she has been ordered to pay, or its calculation, beyond her contention that she should owe no support at all because Son is emancipated.