**Myla L. BRIGHT, Respondent,**

v.

**James E. BRIGHT, Appellant.**

No. 22329.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 24, 1999.

Motion for Rehearing and Transfer to Supreme Court Denied March 16, 1999.

Application to Transfer Denied
April 27, 1999.

John S. Pratt, Susan S. Jensen, Pratt & Fossard, Springfield, for respondent.

CROW, Judge.

James E. Bright ("James")[1] appeals from a judgment ordering him to pay Myla L. Bright ("Myla"): (1) $12,000.00 child support "owed from December 1, 1993 until March 21, 1995," for Lance Dodgen Bright ("Lance"), plus accrued interest; (2) $10,-452.17 for medical expenses incurred by Myla for Lance; (3) $9,329.33 for expenses incurred by Myla for Lance's funeral; (4) $5,000.00 in "partial payment" of Myla's attorney fees.[2]

Discussion of James's three claims of error requires a brief history of the litigation.

The parties' marriage was dissolved March 19, 1987, by a decree granting Myla custody of two children: Lance, born May 19, 1975, and a younger child. The decree ordered James to pay Myla child support of $750 per month per child and to pay all medical and dental expenses of the children.

On June 10, 1993 (22 days after Lance reached age 18), Myla filed a motion to modify. Myla averred Lance had graduated from high school and had been admitted to college, a change in circumstances warranting an increase in child support and an order commanding James to pay Lance's "college expenses."

Lance began attending college at the "end of August [1993]." In October of that year he was arrested and jailed for burglary and extortion. He pled guilty December 6, 1993, and was placed on probation. Myla, fearing Lance would "receive a semester of F's," withdrew him from college.

James thereupon ceased paying Myla child support for Lance.

The lawyer representing Myla on her motion to modify (which had been pending since June 10, 1993) advised her there was "no point in going to court when [Lance] is not in college right now." The lawyer subsequently

Joseph A. Bohrer, Yates, Mauck, Bohrer, Elliff, Croessmann & Wieland, P.C., Springfield, for appellant.

1. For brevity and clarity, this opinion refers to the individuals mentioned in it by their respective forenames. No disrespect is intended.

2. The judgment contains other provisions immaterial to any issue in this appeal.

dismissed the motion "without prejudice" on January 28, 1994.

A year later, on January 30, 1995, Myla filed a motion seeking sundry relief including: (1) a determination of "child support arrearages" owed her by James for Lance; (2) a determination of the "health related expenses" for Lance which James should have paid; (3) a declaration that Lance "is not emancipated." Myla averred Lance was "disabled by reason of a major depression."

Lance committed suicide March 20, 1995.

On August 18, 1995, Myla filed a motion superseding the one she had filed January 30, 1995. The new motion sought the relief identified in clauses "1" and "2" of the paragraph describing the earlier motion, plus an award of "funeral expenses" and a declaration that Lance "was not emancipated at the time of his death."

Following an evidentiary hearing, the trial court entered judgment granting Myla the relief itemized in the first paragraph of this opinion. The trial court found that because Lance was enrolled in college immediately following his graduation from high school, James's child support obligation extended be-

yond Lance's eighteenth birthday pursuant to § 452.340.5.[3] The trial court further found that Lance became mentally incapacitated from supporting himself while he was attending college. The trial court concluded that inasmuch as (a) James was obligated to pay Myla child support while Lance was attending college, and (b) Lance became incapacitated while James was under that obligation,[4] Myla was entitled to child support from James for Lance even after Myla withdrew Lance from college, as Lance (at the time he left college) was "still in need of support" and "not emancipated."

James's first point relied on reads:

"The trial court erred in awarding judgment to [Myla] for child support and medical expenses incurred because [§ 452.340.4] did not confer jurisdiction on the court to compel [James] to support Lance ..., an adult child who was not 'incapacitated' until after he reached his majority, even though [James] might have otherwise been required to support the child had [he] continued to be enrolled in a[sic] institution of vocational or higher learning. There was no substantial evi-

---

**3.** The version of § 452.340 in force when Lance graduated from high school is the version in RSMo Cum.Supp.1992. It has since been amended; however neither party contends the changes affect the outcome here. Section 452.340, RSMo Cum.Supp.1992, reads, in pertinent part:

"1. In a proceeding for dissolution of marriage ... or child support, the court may order either or both parents owing a duty of support to a child of the marriage to pay an amount reasonable or necessary for his support, including an award retroactive to the date of filing the petition....

....

3. Unless the circumstances of the child manifestly dictate otherwise and the court specifically so provides, the obligation of a parent to make child support payments shall terminate when the child:

(1) Dies;

(2) Marries;

(3) Enters active duty in the military;

(4) Becomes self-supporting, provided that the custodial parent has relinquished the child from parental control by express or implied consent; or

(5) Reaches age eighteen, unless the provisions of subsection 4 or 5 of this section apply.

4. If the child is physically or mentally incapacitated from supporting himself and insol-

vent and unmarried, the court may extend the parental support obligation past the child's eighteenth birthday.

5. ... If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school and so long as the child continues to attend such institution of vocational or higher education, the parental support obligation shall continue until the child completes his education, or until the child reaches the age of twenty-two, whichever first occurs....

...."

**4.** Myla maintains Lance was incapacitated "at the time he turned eighteen." However, as this court construes the trial court's findings, the trial court found Lance became incapacitated *after* he reached age eighteen and *after* he began attending college. The trial court's findings on that subject were:

"One issue presented in this case is whether [§ 452.340.4] applies to a child who is over the age of eighteen, attending college and is still legally entitled to receive support and receiving support, who then becomes mentally incapacitated from supporting himself and otherwise comes within the circumstances set forth in said Section."

dence that Lance was 'incapacitated' when he reached his majority; the evidence established that Lance did not become incapacitated until well after his eighteenth birthday and after he had been withdrawn from college because of his incarceration by civil authorities."

James emphasizes that under § 452.340.3(5), his obligation to make child support payments to Myla for Lance would have terminated when Lance reached age eighteen on May 19, 1993, unless subsection 4 or subsection 5 of § 452.340 applied. James insists that inasmuch as Lance was neither physically nor mentally incapacitated from supporting himself when he reached age eighteen, subsection 4 would have conferred no authority on the trial court to extend James's duty to pay Myla child support for Lance beyond Lance's eighteenth birthday.[5] Consequently, reasons James, his duty to support Lance beyond Lance's eighteenth birthday arose only because of Lance's enrollment in college, an event that triggered subsection 5 of § 452.340. James maintains that when Lance left college—and never returned during the remaining 16 months of his life—the duty imposed on James to support Lance under § 452.340.5 terminated.[6]

The issue thus framed by James's first point and the tragic facts of this case is whether a divorced parent who is required by § 452.340.5 to pay child support for an eighteen-year-old son who is attending college can be required by § 452.340.4 to continue paying child support if the son, while in college, becomes mentally disabled from supporting himself, leaves college, and is insolvent and unmarried. The issue is one of statutory construction.

When ascertaining the meaning of a statute, a court's primary role is to determine the intent of the General Assembly from the language used and give effect to that intent if possible. *Trailiner Corp. v. Director of Revenue,* 783 S.W.2d 917, 920[1] (Mo. banc 1990). A court must give effect to a statute as written. *McDermott v. Carnahan,* 934 S.W.2d 285, 287[4] (Mo. banc 1996). In doing so, a court looks to the plain language of the statute. *Id.* at [5].

Had Lance, upon reaching age eighteen and graduating from high school, chosen to get a job (or remain unemployed) instead of attending college, it is undisputed that James's child support obligation for Lance would have terminated. In that scenario, § 452.340.4 (the "physically or mentally incapacitated" exception) would not have extended James's child support obligation, as Lance—at that time—was not (according to the trial court's findings) incapacitated. Consequently, but for Lance's enrollment in college, James's child support obligation for Lance would have ended prior to the filing of Myla's motion to modify on June 10, 1993.

Nothing in 452.340.4 indicates the General Assembly intended that a divorced parent whose child support obligation terminates by reason of his child reaching age eighteen (with no physical or mental incapacity) can, at some future time, be reassigned the duty of support if the child becomes incapacitated.

The Supreme Court of Arkansas confronted a situation analogous to the instant case in *Towery v. Towery,* 285 Ark. 113, 685 S.W.2d 155 (1985). There, a child in good physical and mental health graduated from high school and became an adult a month later upon reaching age eighteen. 685 S.W.2d at 156. A year thereafter, he was injured in an automobile accident which left him a quadriplegic. *Id.* The mother, who had been di-

---

**5.** James concedes that had Lance been incapacitated on the date he reached age eighteen, the trial court could have extended James's child support obligation for Lance "indefinitely past his eighteenth birthday." *See King v. King,* 969 S.W.2d 903, 905–07 (Mo.App. W.D.1998); *In re Marriage of D.R.S.,* 817 S.W.2d 615, 617–19 (Mo. App. S.D.1991).

**6.** Myla points out there are cases holding that a student's temporary absence from college be-

cause of illness, *Braun v. Lied,* 851 S.W.2d 93 (Mo.App. W.D.1993), or because a parent refuses to pay child support, *McNair v. Jones,* 892 S.W.2d 338 (Mo.App. S.D.1995), does not extinguish the child support obligation imposed by § 452.340.5. However, because Lance never returned to college, it is unnecessary to decide whether James's duty under § 452.340.5 to pay Myla child support for Lance would have arisen anew had Lance reentered college.

vorced from the father when the child was seventeen, brought an action against the father for child support. *Id.* Reversing a judgment in favor of the mother, the Supreme Court of Arkansas held that once a child reaches majority and is physically and mentally normal, the legal duty of the parents to support the child ceases and cannot be reimposed later if the adult child becomes disabled and needs support. *Id.*

■ Section 452.340.3(5) clearly states that unless the circumstances of the child manifestly dictate otherwise and the court specifically so provides, the obligation of a parent to make child support payments terminates when the child reaches age eighteen unless subsection 4 or subsection 5 applies. Subsection 4 provides that if the child is physically or mentally incapacitated from supporting himself and insolvent and unmarried, the court may *extend* the parental support obligation *past* the child's eighteenth birthday. That language says to this court that if the child is not physically or mentally incapacitated on his eighteenth birthday, a court has no authority to compel a divorced parent, at a later time, to resume paying child support if the child, sometime after reaching age eighteen, becomes physically or mentally incapacitated.

To construe the statute otherwise would require a ninety-year-old divorced parent to begin paying child support anew to his—or her—ex-spouse if (1) their child became incapacitated at age seventy (after the divorced parent had been free of any support obligation for half a century), and (2) the incapacitated child, insolvent and unmarried, began residing with the ex-spouse. While a caring (and affluent) ninety-year-old parent might willingly assume such a burden, this court is convinced the General Assembly did not intend to require an aged parent to do so under court compulsion.

In the instant case, even though James's child support obligation for Lance was extended past age eighteen by reason of § 452.340.5, James's obligation would have ended when Lance ceased attending college, completed his education, or reached age twenty-two, whichever occurred first. Section 452.340.5 conferred no authority on the trial court to extend James's child support obligation beyond those limits.

Despite that, the trial court (whose compassion deserves no rebuke) ruled that because Lance became mentally incapacitated during the time that § 452.340.5 required James to pay Myla child support for Lance, § 452.340.4 was triggered, requiring James to pay Myla child support for Lance past the time James's obligation under § 452.340.5 would have ended (the date Myla withdrew Lance from college). Thus, the trial court piggybacked § 452.340.4 on § 452.340.5 to impose a child support obligation on James after November 1993 when neither § 452.340.4 nor § 452.340.5 alone would have done so.

■ Having carefully examined § 452.340 in toto, this court holds the General Assembly intended that § 452.340.4 and § 452.340.5 each exist separately and independently as exceptions to the general rule in § 452.340.3(5) that a divorced parent's obligation to pay child support terminates when the child reaches age eighteen. This court further determines that the General Assembly intended, in § 452.340.4, to authorize a court to extend a divorced parent's child support obligation "past the child's eighteenth birthday" only if the child, *at the time he reaches age eighteen,* is insolvent, unmarried, and physically or mentally incapacitated from supporting himself. If a child reaches age eighteen with no such incapacity, this court concludes the General Assembly did not intend § 452.340.4 to authorize a court to impose a child support obligation on a divorced parent if the child, at some future time, were to become mentally or physically incapacitated while insolvent and unmarried.

■ Accordingly, this court holds the trial court erred in ruling that James was obligated to pay Myla child support and medical expenses for Lance after Lance departed college.

James's second point avers the trial court erred in awarding Myla judgment against him for $9,329.33 in reimbursement of expenses incurred by her for Lance's funeral. James asserts that no Missouri case has held

a divorced parent is obligated to pay the funeral expenses of his or her adult child.

Myla argues that Lance was not emancipated when he died. According to Myla, courts in other states have held a father liable for reasonable funeral expenses of his minor child.

James responds that Lance was not a minor at the time he died[7] and James was not then under a duty to pay Myla child support for Lance. Consequently, insists James, cases requiring a father to pay funeral expenses of his minor child are inapplicable.

This court agrees with James. Because Lance was not a minor when he died and (as explained in this opinion's discussion of James's first point) James had no duty to pay Myla child support or medical expenses for Lance at that time, cases cited by Myla dealing with a minor's funeral expenses are inapposite.

■ Although an impassioned argument can be made that under the painful facts here, James should bear some, if not all, of Lance's funeral expenses, this court finds nothing in § 452.340 or the common law authorizing the trial court to compel James to do so. This court therefore holds the trial court erred in awarding Myla $9,329.33 from James for Lance's funeral expenses.

James's final point attacks the portion of the judgment awarding Myla $5,000.00 in "partial payment" of her attorney fees.

■ Section 452.355.1, RSMo 1994, authorized the trial court to award attorney fees in an action of this kind. *Pasley v. Patton*, 855 S.W.2d 385, 388 (Mo.App. W.D.1993). Such an award is within the discretion of the trial court, and its ruling will be disturbed on appeal only upon a showing of abuse of discretion. *In re Marriage of Swanson*, 904 S.W.2d 88, 93[12] (Mo.App. S.D.1995); *Nix v.*

*Nix*, 862 S.W.2d 948, 952[15] (Mo.App. S.D. 1993).

■ Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the trial court abused its discretion. *State ex rel. Webster v. Lehndorff Geneva, Inc.*, 744 S.W.2d 801, 804[1] (Mo. banc 1988).

■ Because (1) the child support, medical expense, and funeral expense issues in this case are novel questions and (2) the record indicates James's income substantially exceeds Myla's, this court, applying the test for abuse of discretion set forth in the preceding paragraph, holds the trial court did not abuse its discretion in the attorney fee award. *Compare: Pasley*, 855 S.W.2d at 388. James's third point is denied.

Those portions of the judgment awarding Myla $12,000.00 child support, $10,452.17 for medical expenses incurred by her for Lance, and $9,329.33 for expenses incurred by her for Lance's funeral are reversed. In all other respects the judgment is affirmed. Costs of this appeal are taxed half against James and half against Myla.[8]

PARRISH, J., concurs.

PREWITT, P.J., files opinion concurring in part and dissenting in part.

PREWITT, Presiding Judge, concurring in part and dissenting in part.

I agree with the majority in affirming the award of attorney fees. As Lance was never emancipated, I would affirm the award of support and funeral expenses. I do agree with the principal opinion that had Lance

---

7. Lance's age at death was nineteen years and ten months. In Missouri, an eighteen-year-old can: own real estate, § 442.010(1) et seq.; enter into contracts, § 431.055; sue and be sued, § 507.115; and vote, § 115.133. Indeed, emancipation can occur prior to age eighteen. A child who dropped out of school before reaching age eighteen, took a part-time job, and had no physical or mental incapacity was held emancipated

in *Harris v. Rattini*, 855 S.W.2d 410, 412[4] (Mo. App. E.D.1993).

8. The ruling in regard to costs of this appeal does not extend to a motion filed by Myla in this court asking for an award of attorney fees for services rendered by her lawyers in this appeal. That motion is denied.

been emancipated before his mental incapacity occurred that Appellant would not have been liable for the support or funeral expenses.

The circumstances of Lance's situation dictated that the obligation to make support payments should not be terminated. Lance never became emancipated for the purposes of § 452.340. Under § 452.340.3, child support payments terminate when a child dies, marries enters active duty in the military, becomes self-supporting with certain conditions, or becomes age eighteen, unless § 452.340.4 or .5 apply.

Section 452.340.4 continues child support obligations past age eighteen if the "child is physically or mentally incapacitated from supporting himself and insolvent and unmarried." Section 452.340.5 continues the child support obligation beyond age eighteen if the child is enrolled in certain schooling, including an institution of "higher education." When Lance became eighteen, the provisions in § 452.340.5 applied to continue the child support. There was evidence from which the trial court could determine that he became mentally incapacitated at a time when Appellant was obligated to pay child support payments, as Lance was enrolled in an institution of higher education. I see nothing in § 452.340 which specifically requires that the child must be physically or mentally incapacitated at the time he reaches age eighteen, and conclude that § 452.340.4 or .5 may cause child support payments to continue past eighteen, at least when an unemancipated child past the age of eighteen becomes mentally incapacitated. One of the purposes of § 452.340 must have been to require parents to support their children past eighteen under the conditions there enumerated. I conclude that when a child attending school as provided in § 452.340.5 becomes mentally or physically incapacitated, as provided in § 452.340.4, the support obligation continues even though at the time of becoming incapacitated the child was past the age of eighteen. I would deny Point I.

As I believe Lance was not emancipated at the time of his death, Appellant should be liable for the funeral expenses. Appellant concedes that, as a general rule, a parent has a duty to pay funeral expenses of a minor child, although there are no Missouri cases which have expressly held that to be the case. Ohio and Indiana courts have imposed a duty upon the parents of minor child to pay the funeral expenses of their minor child. *In re Terrell,* 48 Ohio App.2d 352, 357 N.E.2d 1113, 1116 (1976); *Kaplon v. Harris,* 567 N.E.2d 1130, 1133 (Ind. Sup. 1991). *Terrell* stated that providing a "decent burial for a deceased minor child is no less a necessity arising out of the parent-child relationship than is the providing of food, shelter, clothing and other needs of a child while the child is alive," and that the "public interest requires that a parent assume responsibility ... for the funeral expenses of a minor child." 357 N.E.2d at 1116.

The doctrine of necessaries holds that both parents have a duty to support their child. *See Cole v. Estate of Armstrong,* 707 S.W.2d 459 (Mo.App. 1986), and *Estate of Bonner,* 954 S.W.2d 356 (Mo.App. 1997). I would adopt the general rule found in other states that reasonable funeral expenses are an obligation for a parent to pay on behalf of a minor child. Neither court-ordered expenses related to a child nor the doctrine of necessaries require a parent to be a party to a contract for the parent to be responsible. I would deny Point II, and affirm the judgment.