Patricia E. HICKS (Formerly Quednow), Respondent,

v.

Scott M. QUEDNOW, Appellant.

No. WD 65900.

Missouri Court of Appeals, Western District.

Aug. 1, 2006.

search) and Two Rivers Psychiatric Hospital (Two Rivers) where Travis was diagnosed with paranoid schizophrenia were admitted in evidence and Travis, Ms. Hicks and Mr. Quednow each testified. The circuit court found that Travis was mentally incapacitated and required Mr. Quednow to pay past due child support.

On appeal, Mr. Quednow contends the circuit court erred in finding that Travis, born July 29, 1986, was not mentally incapacitated at the age of eighteen; he was not emancipated due to drug use and failure to take medication; and in awarding past due child support from August 2004 through November 2004.

John R. Shank, Jr., Kansas City, MO, for appellant.

Patricia E. Hicks, Kansas City, MO, respondent acting pro se.

Before HAROLD L. LOWENSTEIN, P.J., PAUL M. SPINDEN, and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Mr. Scott M. Quednow appeals the judgment of the circuit court, denying a request to emancipate Travis Quednow, the son of Mr. Quednow and Ms. Patricia E. Hicks.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Quednow and Ms. Hicks' marriage was dissolved and Mr. Quednow was ordered to pay child support for their son Travis. Mr. Quednow paid child support until Travis turned eighteen. Subsequently, Mr. Quednow filed a motion to emancipate and terminate the child support in October 2004. Ms. Hicks filed an answer and motion to increase child support in December 2004. At trial, medical records from Research Psychiatric Center (Re-

## STANDARD OF REVIEW

■ In a court-tried case, the judgment of the circuit court will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We review the evidence and reasonable inferences in the light most favorable to the circuit court's decision and disregard all contrary evidence and inferences. *Linton v. Linton,* 117 S.W.3d 198, 202 (Mo.App. S.D.2003). "We defer to the trial court's decision even if the evidence could support a different conclusion." *In re Kreutzer,* 50 S.W.3d 334, 337 (Mo.App. S.D.2001).

## LEGAL ANALYSIS

Mr. Quednow who was obligated to pay child support after divorcing Ms. Hicks claims that Travis was not mentally incapacitated at eighteen, and, therefore, child support should be terminated. Travis had quit school at age sixteen, held only one job for a short time, and had used illegal drugs.

■ Three requirements must be satisfied to extend child support beyond a child's eighteenth birthday: (1) the child must be unmarried, (2) insolvent, and (3) mentally or physically incapacitated from supporting himself. Section 452.340.4 (2000)[1]. Section 452.340.4 states:

> If the child is physically or mentally incapacitated from supporting himself and insolvent and unmarried, the court may extend the parental support obligation past the child's eighteenth birthday.

"The evidence needed to show these elements must be substantial." *King v. King*, 969 S.W.2d 903, 905 (Mo.App. W.D. 1998). Various means can be used to establish mental incapacity, such as medical testimony. *State ex rel. Albert v. Sauer*, 869 S.W.2d 853, 855 (Mo.App. W.D.1994). The issues of marriage and insolvency have not been presented on appeal, so the only question is whether Travis was mentally incapacitated from supporting himself at the age of eighteen.

■ A mental condition alone is insufficient to support a finding of mental incapacity. There must be evidence connecting the mental condition to an inability of the child to support himself. *Id.* If the child is not incapacitated on his eighteenth birthday, the circuit court may not compel an extension of child support if the child becomes incapacitated after his eighteenth birthday. *Bright v. Bright*, 989 S.W.2d 196, 200 (Mo.App. S.D.1999).

■ According to the record, Travis was admitted to Research for major depression with psychotic features in March 2004. He had not been eating and was seeing "molecules" floating in the air. Research

records stated that he had a Global Assessment of Functioning[2] that was low enough to substantially impair his ability to work. When Travis left Research on March 30, 2004, he needed prescribed antipsychotic and antidepressant medications and therapy, but he stopped taking the medication and later discontinued therapy.

■ It is not enough to say that Travis had paranoid schizophrenia with hallucinations either before or after his eighteenth birthday. The question is whether there was evidence the circuit court could find that the limitation on his functioning with respect to the ability to support himself existed on his eighteenth birthday. The answer to that question is yes. Given the lay testimony that his situation changed little it was reasonable for the circuit court to conclude that Travis's functional limitations existed before, on the date of his birthday and after he turned eighteen.

Travis's testimony at the hearing was apparently persuasive to the circuit court too. "The trial court is in the best position to judge the credibility of the witnesses and may believe all, part, or none of any witness's testimony." *Foster v. Foster*, 149 S.W.3d 575, 579 (Mo.App. W.D.2004) (*quoting Gant v. Gant*, 923 S.W.2d 527, 530 (Mo.App. W.D.1996)). Travis testified that he lived at home with his mother Ms. Hicks. He stated that upon release from Research, he continued to see "molecules" in the air as well as rats and snakes on the ground. After hearing this testimony the circuit court determined that Travis was credible and not faking his mental problems. Travis turned eighteen on July 29, 2004.

---

1. All statutory references are to RSMo. (2000) and the Cumulative Supplement (2005).

2. The source of this information is from the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDER, (4th ed. 1994) (DSM–IV, Axis V) which describes a five Axis system for diagnosis.

Furthermore, the record shows that Travis's mental condition worsened. In December 2004, Travis was diagnosed with schizophrenia based on a guarded demeanor and hallucinations. At Two Rivers in January–February 2005, Travis was treated for schizophrenia and his Global Assessment of Functioning was low. The Two Rivers medical records also indicated that Travis was having difficulty concentrating during the summer of 2004, and he had become increasingly confused, bizarre, and paranoid. Furthermore, a report from Two Rivers recommended that a guardian be appointed for Travis because he could not care for himself. With this information, the circuit court found sufficient evidence to consider the mental conditions an ongoing problem that existed on Travis's eighteenth birthday.

■■■ Mr. Quednow also contends that Travis was emancipated because his drug use and failure to take prescribed medications put him beyond parental control, and that his mental incapacity was self-inflicted. We do not find, nor does Mr. Quednow provide, any support for the contention that self-inflicted mental incapacity changes the analysis for emancipation. Neither do we find any support for the contention that drug use or refusal to take medication leads to emancipation. In *Sutton,* the only Missouri case that addresses drug use and emancipation, the court found that drug use and felony convictions that do not result in lengthy incarcerations, fail to terminate parental control. *Sutton v. Schwartz,* 860 S.W.2d 833, 835 (Mo.App. E.D.1993). Parental control is not terminated when the custodial parent continues to provide a home and assists the child in dealing with his problems. *Id.* In addition, failed attempts to change the child's lifestyle do not equate with relinquishment of parental control, or a "cast[ing] out into the world to fare for

himself." *Id.* Moreover, evidence of refusal to take medication for schizophrenia is relevant to demonstrate that a child is incapable of managing his financial resources. *Ryan v. Maddox,* 112 S.W.3d 476, 480 (Mo.App. W.D.2003). In *Ryan,* a child with schizophrenia challenged an increase in guardianship powers and the appointment of a conservator, claiming she could handle her finances when properly medicated. *Id.* at 478–79. Evidence of her refusal to take medication was deemed relevant to demonstrate that she was incapable of managing her financial resources. *Id.* at 481–82. Thus, Travis's refusal to take his medication is a relevant factor, which adds support to the circuit court's decision that he was incapable of supporting himself.

Travis has not changed his status in a way that supports emancipation. He has not established himself independent of his mother, he lives at home, he does not work or provide for himself, and he relies on his mother for the necessities of life. Hence, Travis was neither emancipated by prior drug use nor failure to take his medication.

■■■ Finally, Mr. Quednow argues that past due child support should not be paid for the months of August 2004 to November 2004. An "order may be modified only as to support or maintenance installments which accrued subsequent to the date of personal service." § 452.370.6. Circuit courts have jurisdiction to extend child support after a child reaches majority. *Lueckenotte v. Lueckenotte,* 34 S.W.3d 387, 398 (Mo. banc 2001) (citation omitted). However, "[a] trial court has no authority to modify child support retroactive to a date before the filing of the motion to modify and service of summons." *Id.* (*quoting Fulton v. Adams,* 924 S.W.2d 548, 553 (Mo.App. W.D.1996)). In *Lueckenotte,* the court declared that without a judicial declaration of mental incapacity, the child

support obligation terminates when the child reaches majority, and past due child support payments are only owed from the time of the filing and service of the motion to modify. *Id.*; § 452.340.3(5)-.4.

 In this case, the motion to modify was not filed until December 14, 2004. Travis's eighteenth birthday was on July 29, 2004. Mr. Quednow paid child support through July 2004. The circuit court ordered that past due child support payments be made for the months of August through November 2004. Because the motion to modify was not submitted until December, and Missouri law does not allow retroactive application of child support before a motion to modify has been filed, the circuit court incorrectly found Mr. Quednow in arrears for child support for the months of August through November 2004.

In conclusion, we affirm the circuit court's ruling that Travis was mentally incapacitated from supporting himself on his eighteenth birthday and was not emancipated. However, we reverse and remand on the issue of child support. Thus, we affirm in part, reverse in part, and remand with directions for the circuit court to recalculate the child support arrearages from December 2004.

HAROLD L. LOWENSTEIN, P.J., and PAUL M. SPINDEN, J. concur.