Ronald Lynn BRADDY,
Petitioner/Respondent,

v.

Lauralee BRADDY n/k/a Lauralee
Schnaare, Respondent/Appellant.

No. ED 94194.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Nov. 30, 2010.

Steven A. Waterkotte, Stanley D. Schnaare, Anthony R. Dorsett, Hillsboro, MO, for Appellant.

David R. Orzel, Farmington, MO, for Respondent.

MARY K. HOFF, Presiding Judge.

## OPINION

Lauralee Braddy, n/k/a Lauralee Schnaare (Mother), ex-wife of Ronald Lynn Braddy (Father), appeals from the Judgment terminating child support for the parties' three children. On appeal, Mother argues the trial court erred in finding that: (1) no jurisdiction existed to modify the dissolution judgment because she did not file a motion to extend child support prior to J.L.B. and J.L.B (Twins) turning 22; (2) the Twins were emancipated by operation of law; (3) she failed to prove the Twins' insolvency under the statute; and (4) Father does not owe a minimum of $13,000 for the children's uninsured medical expenses. We reverse and remand.

### Factual and Procedural Background

Mother and Father were married on April 28, 1979, and divorced on May 25, 1990. Three children were born of the marriage: R.L.B., born August 8, 1982, and, the Twins, born August 7, 1984. The

Judgment of Dissolution awarded custody of the children to Mother. Father was ordered to pay child support in the sum of $175 every two weeks as support in gross for the three children, with no reduction until the last child was emancipated. Father was also ordered to pay fifty percent of all uncovered medical expenses, and to obtain insurance when available from his employer and when not available through employment, to pay sixty percent of the medical expenses "until said children become emancipated by law." The Judgment of Dissolution made no finding that the Twins were disabled or incapacitated.

On May 11, 2005, Father filed a pro se affidavit for termination of child support alleging his oldest child was emancipated by completing school, and the Twins were previously emancipated by operation of law when they graduated from high school after their eighteenth birthday. At the time of this filing, the Twins were twenty years old.

On May 26, 2005, counsel for Mother filed an entry and request for additional time to file an answer. Subsequently, on July 5, 2005, Mother filed an Answer to Affidavit for Termination of Child Support, a Countermotion to Petitioner's Affidavit for Termination of Child Support, and a Motion for Determination of Amount Due and Owing. Mother also filed amendments to her Countermotion to Petitioner's Affidavit for Termination of Child Support and her Motion for Determination of Amount Due and Owing.

In Mother's Answer to Affidavit for Termination of Child Support, she asserted that the Twins are incapacitated and incapable of earning substantial income to provide for themselves. Furthermore, Mother moved the court to (1) conduct a hearing for the determination as to the Twins' capacity; (2) deny Father's request for termination of child support; and (3) order Father to provide reasonable child support for the duration of the lives of the Twins. In her Countermotion to Petitioner's Affidavit for Termination of Child Support, Mother moved the trial court for a modification of child support and asserting that "[the Twins] are unmarried, insolvent, and physically and irreversibly mentally incapacitated from becoming self-supporting." Mother further requested that the trial court order Father to continue paying child support for the Twins because of their incapacity; that Father be required to repay past health insurance premiums for the children; that Father be ordered to provide health insurance for the Twins; that Father be required to repay fifty percent of the past uninsured medical, and dental, and orthodontia costs for the children, among other relief.

Finally, in Mother's Motion for Determination of Amount Due and Owing, she requested the trial court to order Father to pay various medical and dental expenses, insurance premiums, and educational expenses incurred.

On July 29, 2005, in response to Mother's three motions, Father filed several pleadings including a Motion to Dismiss Mother's Answer, Countermotion, and Motion to Determine Amount Due, Answer to Motion to Determine Amount Due and Owing, Response to Answer to Affidavit for Termination of Child Support, and Answer to Countermotion.

On May 22, 2008, Mother filed a Petition for Appointment of Guardian and Conservator with respect to the Twins. On June 21, 2009, the trial court deemed the Twins to be partially incapacitated and totally disabled as defined in Section 475.010, RSMo 2000,[1] and therefore, legally dis-

---

1. Unless otherwise indicated, all further statutory references are to RSMo 2000.

abled as provided by Section 475.078.2. The trial court appointed Mother as guardian and conservator of the Twins.[2]

On October 30, 2009, shortly before the start of the trial in this case,[3] the trial court asked whether there were preliminary matters that needed to be addressed, at which point Mother's counsel informed the court that Mother was proceeding with her amended motions that were filed. The trial court and both parties asserted that it was their understanding that Mother was proceeding on her amended motions.

At trial, Mother testified that, upon graduation from high school, the Twins entered a vocational rehabilitation program to help them find employment, help them fill out applications, and provide them on-the-job training until they learned the job. Mother further testified that the Twins worked at fast food restaurants, worked less than forty hours per week, earned minimum wage, and never handled money as part of their job duties. Mother testified that the Twins started receiving Supplemental Security Income (SSI) and Social Security benefits in 2004, and the SSI and Social Security benefits vary from month to month due to offsets from their job earnings. Mother stated that she typically did not allow the Twins to carry more than $20 in their wallets because they had difficulty managing money. During cross-examination, Mother stated that her income was approximately $475 per week, and the total amount of expenses for the three children[4] in her custody, including the Twins, was $1,290 per month. Mother admitted, without objection, voluminous books containing certified school records for the Twins that carefully detailed their mental capacities and deficiencies.

Mother's current husband and stepfather of the Twins also testified on Mother's behalf. He testified that he married Mother on March 20, 1992, and took an active role in raising the Twins. He further testified that he was able to observe the Twins' delayed cognitive and educational progress on a daily basis and corroborated Mother's testimony as to their virtual inability to handle money. He stated that, "[i]n a competitive industrial environment where they had to maintain a situation of attention to duty and where they were given multiple tasks, it would be completely impossible for them to [perform forty-hour work weeks]."

Father, who was the only witness to testify on his behalf, testified that, while he agreed the Twins were mentally incapacitated "[to] a level," he did not believe they were incapable of earning a living. Father did not object to the introduction of the Twins' school records into evidence.

After hearing all the evidence, the trial court issued its Judgment finding that the Twins were emancipated and that Mother had failed to establish insolvency of the Twins. This appeal follows.

### Standard of Review

Our review of a trial court's judgment on a motion to terminate child support is limited to determining whether the judgment is supported by substantial evidence, is against the weight of the evidence, or it erroneously declares or applies the law. *Burke v. Hutto*, 243 S.W.3d 431, 433 (Mo.App. E.D.2007). We must view the evidence in a light most favorable to

---

2. These judgments were admitted into evidence at trial without objection.

3. At Mother's request, the case was continued numerous times.

4. The third child in Mother's custody was a stepdaughter from her current marriage.

the judgment, giving deference to the trial court's credibility determinations. *Id.* No deference is owed, however, to questions of law, which we review de novo. *Id.*

### Jurisdiction

■ In her first point, Mother argues the trial court erred in finding that she did not file a motion to extend child support prior to the Twins' turning 22,[5] and thus had no "jurisdiction" to modify the judgment. We find the trial court had authority to modify the judgment. *Webb ex rel. J.C.W. v. Wyciskalla,* 275 S.W.3d 249 (Mo. banc 2009).

Father's position that Mother did not file a timely motion to modify is incorrect. On July 5, 2005, Mother filed several motions, including an Answer to Affidavit for Termination of Child Support, Countermotion to Petitioner's Affidavit for Termination of Child Support, and Motion for Determination of Amount Due and Owing. At the time Mother filed her responsive pleadings, the Twins were twenty years of age. Therefore, the responsive pleadings were filed timely. Section 452.340.4.

Moreover, Father is incorrect in arguing and the trial court erred in finding that the numerous motions filed by Mother on July 5, 2005, were not or could not be considered a motion to modify under Section 452.340.11(4). Mother's first paragraph of her timely-filed Countermotion to Petitioner's Affidavit for Termination of Child

Support with Amended Prayer states that she "moves for a Modification of Child Support." A plain reading of Section 452.340.11(4) would designate this Countermotion as a motion to modify.[6]

Section 452.340.11(4) does not require the responsive pleadings to Father's pro se affidavit for termination of child support be an officially titled "Motion to Modify." Section 452.340.11(4) only requires that the denial be a sworn statement or affidavit. Mother's Counter Motion requesting the Modification of Child Support was a sworn affidavit that was notarized, therefore meeting the sworn statement or affidavit requirements of a motion to modify under Section 452.340.11(4). Point I is granted.

### Emancipation and Insolvency

■ We address Mother's second and third points together as they are interrelated. In her second point, Mother argues the trial court erred in finding that the Twins were emancipated by operation of law in June 2004 after their graduation from high school. Mother contends Section 452.340.3 provides that child support payment shall terminate when the child reaches the age of 18, unless the child is physically or mentally incapacitated, insolvent, and unmarried, under Section 452.340.4, and, in the instant case, the Twins met all three requirements of the statute and therefore were not emancipated in June 2004.[7] In her third point,

5. In 2007, the legislature substituted in Section 452.340.3(6) "twenty-one" for "twenty-two" and "twenty-first" for "twenty-second" as the age parental support would cease unless otherwise provided in the child support order. The legislature also amended Section 452.340.11(1) and substituted "twenty-one" for "twenty-two" as the age child support would terminate, unless otherwise required by a child support order.

6. Father argues that his motion to dismiss, which was filed but never set for a hearing,

should have put Mother on notice that her pleadings were in question. Father's argument is without merit.

7. The record shows that the Twins were unmarried and have never been married. This fact was admitted in Father's Answer to Counter Motion and is not challenged on appeal. Therefore, the only questions to be resolved by this Court are whether the Twins were insolvent and mentally incapacitated from supporting themselves at the age of eighteen. Section 452.340.4.

Mother argues the trial court erred in finding that she failed to prove the Twins are not insolvent within the meaning of Section 452.340.4 because Mother submitted substantial evidence of the Twins' insolvency, defined as the "inability to pay debts as they become due in the ordinary course of business." *Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 398 (Mo. banc 2001). We agree on both points.

In its Judgment, the trial court found that, "[the Twins] graduated from High School in June of 2004, did not further their education, and were therefore emancipated by operation of law at that time." The trial court ordered Father's child support obligation terminated because "[the Twins] are each emancipated by operation of law prior to the filing of [Father's] Affidavit of emancipation on May 11, 2005." The trial court erred in finding the Twins were emancipated upon graduating from high school in June 2004.

■ Section 452.340 provides the obligation to support a child generally terminates when that child reaches the age of eighteen. Section 452.340.3. However, the duty to support a child past the age of eighteen extends in the case of an incapacitated child. Section 452.340.4. The intention of Section 452.340.4 was to authorize a trial court to extend a divorced parent's child support obligation past the child's eighteenth birthday only if the child, at the time he reaches age eighteen, is insolvent, unmarried, and physically or mentally incapacitated from supporting himself. *Bright v. Bright*, 989 S.W.2d 196, 200 (Mo. App. S.D.1999). If a child reaches age eighteen with no such incapacity, Section 452.340.4 does not authorizes a court to impose a child support obligation on a divorced parent if the child, at some future time, were to become mentally or physically incapacitated. *Id.* In light of Missouri case law, the relevant inquiry to determine

whether the Twins were emancipated by law turns on whether they were mentally or physically incapacitated on their eighteenth birthday, which was on August 7, 2002.

Contrary to Father's contentions, despite the fact that the Twins had reached the age of majority, graduated from high school and did not further their education, the trial court had jurisdiction to order that Father's child support obligation be extended. *Id.* Missouri courts have upheld orders which continued child support for adult mentally incapacitated children when there was evidence to support a finding of a limitation on a child's functioning with respect to the ability to support himself on his eighteenth birthday. *See Hicks v. Quednow*, 197 S.W.3d 217, 220 (Mo.App. W.D.2006); *King v. King*, 969 S.W.2d 903, 904 (Mo.App. W.D.1998), *Racherbaumer v. Racherbaumer*, 844 S.W.2d 502, 504 (Mo. App. E.D.1992). The evidence needed to show insolvency and mental or physical incapacitation must be substantial. *Hicks*, 197 S.W.3d at 220.

At trial, Mother and her current husband testified at great length regarding the Twins' disability and incapacitation. Additionally, Mother introduced voluminous school records, without objection, which chronicled the Twins' developmental history and their disabilities, including their intelligence quotient, speech, awareness, and basic mathematical abilities.

On the issue of incapacity, the trial court found in its Judgment that the Twins "have a diagnosed disability and a guardian." On the issue of the insolvency, the trial court made the following finding in its Judgment:

[Mother] presented no evidence as to either of the twins' insolvency. In fact, the evidence was that each boy is working part time at different fast food restaurants. [Mother] presented no evi-

dence as to either [of the Twins] actual income. Furthermore, each receives Social Security and SSI which varies from month to month due to a partial set off depending on the sums they earned in the preceding month, but when combined with their incomes, each exceed seven hundred sixty-five dollars each per [sic] month, the amount reflected received during the month of February 2008 in government benefits alone, ... and that each has restricted savings account with more than a thousand dollars in it. The testimony of [Mother] was that the savings accounts have remained relatively stable for more than a year. [Mother], as their guardian, controls the twins' spending and saving. There was absolutely no evidence of any debts of either [of the Twins]. There was no evidence of any expenditures. Therefore, neither is insolvent within the meaning of section 452.340.4. RSMo.

▮▮▮ Insolvent is defined as "the inability to pay debts as they become due in their ordinary course of business." *Denney v. Winton,* 184 S.W.3d 110, 116 (Mo. App. S.D.2006) (*quoting Racherbaumer,* 844 S.W.2d at 505). Additionally, showing a child's insolvency under Section 452.340.4 "requires some evidence of the child's earnings, living expenses, and ability to meet obligations." *State ex rel. Albert v. Sauer,* 869 S.W.2d 853, 855 (Mo.App. W.D. 1994). The same facts that establish the child's inability to support himself, because of mental incapacity, can establish the child's inability to meet obligations. *Id.* If the child, at the time he reaches age eighteen, is insolvent, unmarried, and physically or mentally incapacitated from supporting himself then the statute's requirements are satisfied. *Bright,* 989 S.W.2d at 200.

Based on the trial court's findings in its Judgment, it failed to correctly apply the law. All of the trial court's findings were relevant to the Twins' present situation. For instance, the trial court made findings as to the Twins' current employment and wages earned through their employment, their Social Security and SSI benefits they currently receive, and the amounts in their bank account at or near the time of trial. The trial court, however, made no findings relating to the Twins' insolvency at or near the time of their eighteenth birthday despite evidence produced in this regard.

At trial, Mother presented substantial evidence to prove that the Twins were insolvent on their eighteenth birthday and remain insolvent to this day. According to the evidence at trial, the Twins began receiving Social Security and SSI benefits shortly before they graduated from high school in 2004, at the age of nineteen. Furthermore, Mother's current husband and stepfather to the Twins testified that they never were able to work more than part-time jobs and only with a great deal of supervision. The school records around the time of the Twins' eighteenth birthday further indicate that the Twins "[do] not know basic math facts that should have been mastered, [make] careless computational errors frequently, [do] not understand place value [and] ... cannot apply mathematics to daily situations." The school records indicate the Twins were operating at a third or fourth grade cognitive level when they were approximately eighteen.

▮▮ The ability to pay debts as they become due not only means the ability to cover the expenses of those debts, but also the physical ability to actually pay them. *See King,* 969 S.W.2d at 904–905 (finding that the adult child was insolvent based on evidence that he was unable to handle his own money, unable to consistently meet his financial needs without the help of his mother, and not capable of earning an income sufficient to live outside the home);

see also *In re Marriage of D.R.S.*, 817 S.W.2d 615, 618 (Mo.App. S.D.1991) (finding that the adult child was insolvent based on the fact that she worked part-time as a housekeeper earning minimum wage, lived with her mother, and her mother paid for the food, utilities, medicine, monthly doctor bills, and her car insurance). Here, based on the evidence and testimony, the Twins were incapable of supporting themselves and handling their basic finances.

The trial court heard testimony and received evidence as to the Twins expenditures, their Social Security and SSI benefits, and their job earnings. Trial testimony indicated that the amount of benefits each child received was dependent and partially setoff based on the amount the Twins earned from their job wages. As to the Twins' present situation regarding their savings accounts, there was testimony that there was roughly $1,000 in one and $800 in the other.

Given their meager savings accounts, an average of approximately $185 received per month in combined benefits, part-time minimum wage jobs where they never worked forty hours per week, and their difficulty to do even basic math, Mother presented substantial evidence to demonstrate the Twins were insolvent on their eighteenth birthday and continue to be insolvent to the present time. Based on the evidence presented at trial and under Missouri law, the trial court erred in finding that the Twins were emancipated in June 2004 because the Twins met all three requirements on their eighteenth birthday of being "physically or mentally incapacitated, insolvent, and unmarried." Section

452.340.4. Point II and Point III are granted.

### *Reimbursement of Insurance and Non–Covered Medical Expenses*

■ In her fourth and final point, Mother argues the trial court erred in finding that Father's reimbursements of approximately $13,000 to Mother for insurance coverage, medical, dental, and eyecare are offset by Father's overpayment of child support to Mother in the amount of almost $15,000.[8] Specifically, Mother argues that Missouri law provides that a parent who exceeds or overpays child support payments is presumed to have voluntarily overpaid and, as such, in the instant case, Father cannot be given credit against his other obligations. We agree.

In its Judgment, the trial court made the following finding: "the reimbursements for insurance coverage and medical, dental and eye care are approximately equal to the overpayment of child support from the date of filing the affidavit of emancipation, therefore, the Court orders neither party to pay any further moneys to the other." The trial court found that "[Father] is obligated to reimburse [Mother] for his portion of the uncovered medical, dental and eye care cost for both [Twins] incurred until June 30, 2004." The trial court further found that "[Father] has overpaid [Mother] for support by almost $15,000.00 and owes [Mother] at least $13,000.00 for necessaries prior to emancipation."

The trial court's conclusions regarding Father's overpayments are premised on its erroneous finding that the Twins were in fact emancipated on June 2004. As determined by this Court under Point I, however, the Twins were not emancipated under

---

**8.** Mother does not contest the amount of $13,000 awarded but only the offset granted

to Father by the trial court.

Section 452.340.3. Furthermore, as previously discussed, June 2004, the date the Twins graduated from high school is irrelevant to determining emancipation. Instead, the proper date to determine whether the Twins were emancipated is August 7, 2002, their eighteenth birthday. Section 452.340.4.

Having found the Twins were not emancipated on August 7, 2002, Father's child support payments prior to the filing of his pro se affidavit for termination of child support, on May 11, 2005, cannot be used to offset the amount he owes Mother. Given our finding of non-emancipation, the trial court improperly allowed Father's child support payments to offset a portion of the $13,000 he owed Mother for unreimbursed medical expenses. Point IV is granted.

### Conclusion

We reverse the trial court's Judgment and hold that the Twins were not emancipated on their eighteenth birthday, and therefore Father's child support obligation continues. We remand for the trial court to consider Mother's motion to modify and to determine any past child support owed to Mother consistent with these findings and to not allow any offset for unreimbursed medical expenses.

SHERRI B. SULLIVAN, Judge, and NANNETTE A. BAKER, Judge, concur.